**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

LUKE B.J.,[1]

Plaintiff,

*v.*

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

Case No. 25-cv-02486-AWM

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) pursuant to sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ's) evaluation of the medical evidence or his assessment of Plaintiff's residual functional capacity (RFC), the Court **ORDERS** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed applications for SSDI and SSI benefits on June 14, 2022. R. at 17. He requested and received a hearing before an ALJ. In fact, he received two. Although Plaintiff speaks English, his first hearing was adjourned when Plaintiff requested a Croatian interpreter. R. at 53.

---

[1] The Court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

When a Croatian interpreter appeared at a second hearing a month later, Plaintiff told the ALJ he didn't need anything. R. at 42. "I don't want any more hearing, from any doctor, any judge." *Id.* He then called the hearing ridiculous and left. *Id.* After a recess, his attorney represented Plaintiff at the hearing, and the proceedings are attached to the record.

After the hearing, the ALJ determined that Plaintiff suffers severe impairments including diabetes mellitus, hypertension, hyperlipidemia, obesity, schizophrenia, bipolar disorder, and anxiety. R. at 20. The ALJ also concluded that Plaintiff's vision impairment, urinary frequency, and adhesive capsulitis in his left shoulder did not limit Plaintiff's ability to perform basic work-related activities and were therefore not severe. R. at 21. The ALJ concluded Plaintiff was not disabled as defined by the Act and that he could perform medium exertional work with some limitations. R. at 22–23.

Plaintiff argues the ALJ erred when he (1) determined that Plaintiff's mental impairments do not meet or equal listing level; (2) failed to properly assess the effects of that mental illness on his ability to sustain the requirements for full-time work; and (3) concluded that Plaintiff can perform a full range of work at the medium exertional level. Plaintiff also asserts that the ALJ's assessment of opinion evidence regarding Plaintiff's mental functioning is "unsupported and unexplained." Doc. 8 at 18.

After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. LAW & ANALYSIS

The Commissioner uses a five-step sequential process to evaluate a claim for disability:

(1) The claimant must demonstrate that she is not engaged in substantial gainful activity.

(2) The claimant must show that she has one or more severe medically determinable impairments (i.e., that the claimant's impairments substantially limit her ability to perform basic work activities).

(3) The ALJ considers whether any of the impairments identified in step two meet or equal one or more of the impairments cataloged in a designated list. If the claimant's impairments do, then the claimant is presumed disabled. If they do not, the ALJ will proceed to step four. But before doing so, the ALJ must determine what is referred to as the claimant's residual functional capacity, or "RFC." The RFC describes the claimant's ability to work, taking all the claimant's limitations (whether severe or not) into consideration.

(4) The claimant must show that the limitations in her RFC prevent her from performing her past work.

(5) Provided that the claimant has shown (4), the burden shifts to the Commissioner to show that the claimant has sufficient RFC to perform work in the national economy, given her age, education, and experience.

20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The burden rests with the claimant in the first four steps of this process to prove disability, and if the claimant is successful in sustaining her burden at each step, the burden then shifts to the Commissioner at step five. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989). If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.* At step five, the Commissioner has the burden to prove that considering claimant's RFC, age, education, and past work experience, he is capable of performing other work. *Id*; *20* C.F.R. § 416.920(f).

On appeal, this Court's review is guided by the Act. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). A claimant must be disabled to qualify for benefits under the Act. 42 U.S.C. §§ 423(a), 1382(a). To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

Judicial review of the ALJ's findings is limited. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). A court reviews the ALJ's factual findings to determine whether substantial evidence in the record supports the factual findings and whether the correct legal standards were applied. *Id.* The ALJ's factual findings are conclusive under 42 U.S.C. §§ 405(g) and 1383(c)(3) if they have substantial evidentiary support. *Id.* "Substantial evidence has long been defined to mean more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 839 (10th Cir. 2020) (cleaned up). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). And this Court does not reweigh evidence or substitute its own judgment for the ALJ's. *Lax*, 489 F.3d at 1084.

### A. There is Substantial Evidence to Support the ALJ's Determination at Step Three that Plaintiff was not Disabled.

The centerpiece of Plaintiff's appeal to this Court challenges the ALJ's evaluation of the medical evidence, which Plaintiff claims is "unsupported and unexplained." Doc. 8 at 18. On the contrary, the ALJ's twelve-page decision reflects that he rendered his decision based on the available medical evidence as a whole. And the ALJ's decision

makes clear that Plaintiff's credibility was critical to his determination of Plaintiff's asserted disability. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

The ALJ noted "there are a number of reports or statements throughout the record, which suggest claimant is not as limited as he alleges." R. at 24. As one example, Plaintiff's treating psychiatrist noted Plaintiff "was generally an unreliable historian and appeared to be actively manipulating self-reported history and mental status exam answers." R. at 25, 863. When Plaintiff told his psychiatrist that his lawyer had given him disability papers and asked the doctor to assist him in completing them, his psychiatrist told him it was unlikely to assist in a disability finding given the inconsistencies and contradictions the doctor observed during his evaluation. R. at 864.

Although Plaintiff accuses the ALJ of "cherry-picking" facts and "ignoring other evidence" in the record, the ALJ's decision reflects that he considered Plaintiff's preferred evidence, such as the report of a consultative psychologist who was unable to perform an examination because she believed Plaintiff was in an "active and psychotic state." R. at 26, 575. Plaintiff told the psychologist he didn't know how he got to his appointment. R. at 572. She initially saw him walking around the parking lot of her building. R. at 572. But when she checked again, he was gone. R. at 572. She also noted that Plaintiff's gait was stilted and unsteady, he used a crutch under his right arm, and his left arm appeared to be drawn and inactive, held tightly to his side. *Id.*

The ALJ just didn't find such evidence to be credible. And this Court will not upset credibility determinations where, as here, they are supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010). Moreover, the ALJ discussed each medical opinion in the record and thoroughly explained the weight given to them. R. at 26.

The ALJ also considered a report of investigation from the Cooperative Disability Investigations Unit (CDIU) documenting how agents of the CDIU observed Plaintiff drive forty-five minutes from Osawatomie to Overland Park, Kansas, using only his left arm. He then got out of the car unassisted, used his left arm to open a rear passenger door, retrieved a crutch he didn't appear to be using, and made his way to a medical appointment carrying the crutch. R. at 21, 602–617.





As noted in the CDIU's report, and just six months before these photographs were taken, Plaintiff reported "left side weakness from a stroke that effects [sic] everything he does." R. at 592. "He does not drive because he gets double vision." *Id.* "He uses a walker or crutches to ambulate." *Id.* "He struggles with lifting, squatting, bending, standing, reaching, sitting, talking, seeing, hearing, using his hands and climbing stairs." *Id.* The ALJ acknowledged Plaintiff's claims that he couldn't drive, and

"that he was not independent in any activities of daily living and could not move his left arm due to numbness and he had to use a walker when leaving his house." R. at 23.

The ALJ also considered another report cited by Plaintiff where the doctor noted that Plaintiff reported experiencing hallucinations. Doc. 8 at 6; R. at 858. Among other things, Plaintiff reported seeing blood when he was sleeping. R. at 858. But he also told the doctor that his lawyers had asked for new evaluations. *Id.* And the doctor noted the fact that he drove himself to his appointment reflected "good orientation to time, place and situation." *Id.* The doctor noted that Plaintiff's "previous answers regarding orientation on initial evaluation were unreliable." *Id.*

This is a case where a picture is worth a thousand words. And in this case, the Court is not inclined to reweigh evidence or substitute its own judgment for the ALJ's—even if the law permitted it to do so. *Lax*, 489 F.3d at 1084. The ALJ thoroughly explained his reasoning and tied his decision regarding Plaintiff's disability to substantial evidence in the record.

**B. Substantial Evidence Supports the ALJ's Determination that Plaintiff Maintained the RFC to Perform Medium Work with Limitations.**

Plaintiff next argues that even if Plaintiff's mental and physical impairments do not rise to listing level, the ALJ failed to assess whether they limited Plaintiff's ability to perform full-time, unskilled work at the medium exertional level. Doc. 8 at 10. As Plaintiff tells it, the ALJ did "little more than reject Plaintiff's reports of mental health struggles as unreliable" because they were self-reported. Doc. 8 at 14.

On the contrary, the ALJ considered objective medical evidence, medical source statements, and Plaintiff's self-reported statements. R. at 23–25. These included treatment records from July 2023 when Plaintiff reported feeling "okay," and reported

"walking for exercise three times a week for 45 minutes." R. at 24. Plaintiff's "mental status exams were normal, and he was goal directed, organized and logical." *Id.* "At a treatment visit in August 2024, the [Plaintiff] did not appear to be responding to internal stimuli, gave contradicting inconsistent information and the provider noted that objective observations were not consistent with self-reported symptoms." R. at 25.

Similarly, Plaintiff argues it was "egregious" for the ALJ not to "even consider Plaintiff's upper extremity musculoskeletal impairments" in reaching his finding that "Plaintiff can lift and carry up to 50 pounds." Doc. 8 at 20. But the ALJ also considered this evidence, including a report that Plaintiff "was not independent in any activities of daily living and could not move his left arm due to numbness and he had to use a walker when leaving his house." R. at 23. The ALJ, however, was in the best position to resolve such conflicts in the evidence, and he did so. *Thomas v. Berryhill*, 685 F. App'x 659, 661 (10th Cir. 2017).

The ALJ also noted that Plaintiff's "physical examinations demonstrate good range of motion, normal motor and sensory function, and normal gait without an assistive device." R. at 25. And none of that is surprising in light of the photographs attached to the CDIU's report. The ALJ conducted a thorough review of the relevant evidence, including evidence of Plaintiff's malingering, and explained how he arrived at the RFC. R. at 26.

In the end, the question isn't whether Plaintiff mustered some evidence to support his claims, but whether substantial evidence supports the ALJ's determination. And here it does. *Noreja v. Comm'r, SSA*, 952 F. 3d 1172, 1182 (10th Cir. 2020) ("We are not at liberty to second-guess the ALJ's determination.") (citation omitted). Substantial evidence on the record as a whole—including contemporaneous treatment notes,

independent medical opinions, and Plaintiff's own behavior—supports the ALJ's determinations that Plaintiff could perform medium work with certain limitations as outlined by the ALJ.

## III. CONCLUSION

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's appeal, Doc. 8, is **DENIED**.

**IT IS FURTHER ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

Dated this 3rd day of September, 2026, at Topeka, Kansas.

*s/ Anthony W. Mattivi*
Anthony W. Mattivi
United States District Judge